Annie **TREMAIN**, Appointing Authority, Missouri Department of Social Services, Family Support Division, Respondent,

v.

**Kimberly PETERSON, Appellant.**

**No. WD 66723.**

Missouri Court of Appeals, Western District.

June 29, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 2007.

Application for Transfer Denied Oct. 30, 2007.

---

George R. O'Connor, Parkville, MO, for appellant.

Nicole Lynn Loethen, Asst. Atty. Gen., Jefferson City, MO, for respondent.

Before NEWTON, P.J., BRECKENRIDGE and ELLIS, JJ.

PATRICIA BRECKENRIDGE, Judge.

Kimberly Peterson appeals the circuit court's judgment reversing the decision of the Personnel Advisory Board (PAB). The decision of the PAB found that Annie Tremain, the appointing authority for the Missouri Department of Social Services, Family Support Division (hereinafter referred to as "FSD"), did not properly dismiss Ms. Peterson from her position as a Child Support Enforcement Supervisor. The basis of the PAB's decision was that FSD did not afford her due process because the dismissal letter did not include the names of the employees that made statements against her. Specifically, the PAB found that the names of the persons who witnessed Ms. Peterson's conduct and who reported her conduct were necessary for Ms. Peterson to prepare her defense. Based on the defect in the dismissal letter, the PAB ordered that Ms. Peterson be reinstated to her former position with back pay. FSD appealed the PAB's decision to the circuit court, which reversed the PAB's decision. The circuit court found that the dismissal letter sufficiently set forth the reasons for Ms. Peterson's dismissal regarding one allegedly inappropriate conversation she had with subordinate employees so that she could prepare a defense. Therefore, the circuit court remanded the case back to the PAB for an administrative hearing in which Ms. Peterson could challenge her dismissal.

Ms. Peterson raises two points on appeal. In her first point, she asserts that the PAB did not err in concluding that FSD did not afford her due process because the dismissal letter did not include (1) the names of the employees that made statements against her, or (2) the specific infractions or observations about her that were reported by the employees. In her second point, Ms. Peterson contends that the PAB did not err in ordering reinstatement and back pay because the PAB has the statutory authority to make her whole when she was not properly discharged. Because the dismissal letter provided Ms. Peterson with sufficient notice of the charges against her to prepare a defense regarding one allegedly inappropriate conversation Ms. Peterson had with subordinate employees, the decision of the PAB is reversed. The case is remanded to the PAB for a hearing on the merits of Ms. Peterson's dismissal on the basis of that claim of misconduct.

**Factual and Procedural Background**

In August 1995, Ms. Peterson began her employment with the Missouri Department of Social Services in a clerical position. She was eventually promoted to the position of a CSE Technician and, then, on December 18, 2000, she was promoted to the position of Child Support Enforcement Supervisor.

On December 8, 2004, Ms. Peterson arrived to work late. That same day, in her office, Ms. Peterson discussed with several of her subordinates that she was late because she had overslept. She said that she had gone out the night before to celebrate the end of the dart season and drank too much. She also discussed with her subordinates, Eva, Sara, and Mary,[1] the details of the previous night's celebration. For example, she told them that several people had approached her and told her that she was attractive and that she did not know how she got home. She also told them that Mel had called her and asked her if she "knew where her teeth were and how they had gotten in her bra." She also said that, at one point during the evening, ev-

---

1. The use of first names only is not meant to be disrespectful. Rather, Ms. Peterson's statement indicates only the individual's first names.

eryone on the dart team had "swapped shirts" and that they were going to get together on New Year's Eve to "trade them back."

After Ms. Peterson's conversation was reported to management, Office Manager Martha Morris spoke to Ms. Peterson about the incident and asked Ms. Peterson to provide a written statement. On December 9, 2004, Ms. Peterson provided a written statement of the conversation she had with her subordinates in her office in which she acknowledged making the above statements.

On February 4, 2005, FSD issued a letter of dismissal to Ms. Peterson, notifying her that she was dismissed from her employment with FSD, effective February 18, 2005. The letter informed Ms. Peterson that the specific reason for her dismissal was her "repeated and continuing inappropriate conduct." In particular, the letter informed Ms. Peterson that her dismissal was based on section 36.380, RSMo 2000,[2] which authorizes dismissal when "such action is required in the interests of efficient administration and that the good of the service will be served thereby." The letter also stated that her dismissal was based on violation of subsections (H), (K), (L), and (M) of Rule 1 CSR 20–3.070(2) of the Rules of the Personnel Advisory Board and Personnel Division,[3] DSS Policy 2–101,[4] DSS Policy 2–115,[5] and DSS Policy 2–124.[6]

Ms. Peterson's dismissal letter also referred to the particular conversation she had with her subordinates in her office on December 8, 2004, when she told them why she was late for work. Specifically, the letter alleged that during that conversation she told her subordinates that she felt like she was still drunk and made comments about how she celebrated the end of the dart season the previous evening. The letter also noted other instances of alleged misconduct. Specifically, the letter alleged that throughout the day on December 8, 2004, Ms. Peterson "relayed information" about her statements regarding the dart tournament celebration to other employees in the office. Also on December 8, 2004, the dismissal letter alleged that during another office conversation about pets, Ms. Peterson said that when her dog wants attention, he "sticks his

---

**2.** All statutory references are to the Revised Statutes of Missouri 2000.

**3.** Subsections (H), (K), (L), and (M) of Rule 1 CSR 20–3.070(2) provide:

(H) Has been guilty of a scandalous and disgraceful conduct while on or off duty where this conduct tends to bring the state service into public disrepute or has exhibited behavior which adversely affects the employee's job performance, the employing agency, or both;

. . . .

(K) Has been guilty of insubordination or has failed to respond in a reasonable manner to his/her lawful orders or instructions of persons with duly delegated authority over the employee;

(L) Has willfully violated the lawful regulations or policies of the agency by which employed after having been made aware of the regulations and policies;

(M) Has been abusive or physically violent toward other employees while on duty or in the duty area or has willfully exhibited behavior which is disruptive of the working activities of other employees[.]

**4.** DSS Policy 2–101 prohibits "conduct which creates an intimidating, hostile, or offensive working environment."

**5.** DSS Policy 2–115 provides, in part, "All employees must follow legitimate written and/or oral directives from supervisors and managers, unless the instructions are illegal or clearly violate safety procedures."

**6.** DSS Policy 2–124 states, in part, "DSS will not tolerate any type of conduct that harasses, disrupts or interferes with another employee's work productivity or creates an intimidating, offensive or hostile work environment."

nose in [her] crotch," which leaves her feeling "moist." Finally, the letter alleged that Ms. Peterson said to "staff" that at least three different women "wanted" her and were "hot" for her. The dismissal letter further noted that management had issued two previous memorandums of concern to Ms. Peterson regarding her conduct and demeanor in the office and that, in September 2004, the regional manager had a conversation with her about "inappropriate socializing with subordinate staff."

On March 11, 2005, Ms. Peterson filed a motion for review of her discharge with the PAB. Ms. Peterson alleged that she was denied due process because the dismissal notice failed to sufficiently set out the allegations against her so that she could prepare and refute the allegations at the hearing on her appeal. On April 12, 2005, the PAB issued a memorandum and order granting Ms. Peterson's motion for review for failure to provide adequate notice in the dismissal letter. Specifically, the PAB found that while the dismissal letter did "clearly" inform Ms. Peterson of the date that she made inappropriate comments and what the inappropriate comments were, the letter "did not provide the names of the employees who heard [Ms. Peterson's] inappropriate statements made throughout the day on December 8, 2004, or December 9, 2004." The PAB concluded that failure to provide the names of the employees who made statements against Ms. Peterson is "critical information" that must be contained in the disciplinary letter so that she could depose them or call them as witnesses. Therefore, the PAB ordered that Ms. Peterson be reinstated and paid back pay.

FSD appealed the PAB's decision to the circuit court. The circuit court reversed the PAB's decision reinstating Ms. Peterson finding that the dismissal letter sufficiently set forth the reasons for Ms. Peterson's dismissal regarding the dart tournament conversation that took place in her office on December 8, 2004, so that she could prepare a defense. The circuit court remanded the case back to the PAB for an administrative hearing on the merits of Ms. Peterson's dismissal letter. Ms. Peterson filed this appeal.

## Standard of Review

 On appeal, this court reviews the decision of the PAB, not the circuit court's judgment. *Lombardi v. Dunlap*, 103 S.W.3d 786, 789 (Mo.App. W.D.2003). This court will affirm the decision of the PAB "unless it exceeds agency authority; it is not based upon substantial and competent evidence on the record as a whole; it is unreasonable, arbitrary, or capricious; it involves an abuse of discretion; or it is otherwise unlawful." *Id.*

## Dismissal Letter Provided Sufficient Notice Regarding Dart Tournament Conversation

In her first point on appeal, Ms. Peterson asserts that the PAB did not err in concluding that FSD did not afford her due process because the dismissal letter did not include the names of the employees that made statements against her or the specific infractions or observations that were reported by the employees. In particular, Ms. Peterson argues that the notice she received was "insufficient as a matter of both fact and law" because the notice "wholly fail[ed] to go beyond unsupported allegations of misdeeds: without attribution or context" and, therefore, she had "insufficient information to prepare a meaningful response to the allegations of misdeeds."

Ms. Peterson, as an employee of the State of Missouri, has a property interest in continuing employment with FSD. *Lom-*

*bardi*, 103 S.W.3d at 790. "Thus, due process requires that, before [Ms. Peterson] can be deprived of this property interest, [she] must receive adequate notice and an opportunity for a hearing." *Id.* In accordance with the requirement of adequate notice, section 36.380 provides, in relevant part, "No dismissal of a regular employee shall take effect unless, prior to the effective date thereof, the appointing authority gives to such employee a written statement setting forth in substance the reason therefor and files a copy of such statement with the director." Moreover, under section 36.390.5:

> Any regular employee who is dismissed or involuntarily demoted for cause or suspended for more than five working days may appeal in writing to the board within thirty days after the effective date thereof, setting forth in substance the employee's reasons for claiming that the dismissal, suspension or demotion was for political, religious, or racial reasons, or not for the good of the service. Upon such appeal, both the appealing employee and the appointing authority whose action is reviewed shall have the right to be heard and to present evidence at a hearing which, at the request of the appealing employee, shall be public.

■■■ "The purpose of giving the employee notice is to provide the employee with adequate information about the reasons for the dismissal to enable the employee to prepare a defense." *Lombardi*, 103 S.W.3d at 790. The question whether an employee is provided with adequate notice is a question of law, which this court reviews *de novo. Smith v. Rosa*, 73 S.W.3d 862, 865 (Mo.App. W.D.2002). No deference is given to either the circuit court's decision or the decision of the PAB. *Id.*

■■■ Regarding the required notice that must be provided in a dismissal letter, while it is not required that the letter "cite the specific policy or rule the employee violated, if the specific policy or rule is not cited, the letter must explain the policy or rule and indicate how the employee's conduct was in violation thereof." *Lombardi*, 103 S.W.3d at 790. Moreover, "[n]otice must be sufficiently specific as to the time and nature of the incident at issue so that the employee has no uncertainty as to the acts related to her discharge." *Id.*

Here, the dismissal letter cited the specific statute, section 36.380, specific regulation, subsections (H), (K), (L), and (M) of Rule 1 CSR 20–3.070(2), and specific department policies, DSS Policy 2–101, 2–115, and 2–124, that Ms. Peterson allegedly violated. Ms. Peterson claims that the dismissal letter did not provide the "specific infractions or observations of [her] reported by the employees." [7] Regarding the allegedly improper conversation Ms. Peterson had with her subordinates in her office on December 8, 2004, about Ms. Peterson's social activities the previous evening, the dismissal letter stated:

> On 12/8/04, it was alleged that you engaged in an inappropriate conversation about your social activities from the previous evening with subordinate employees in the workplace. Once this was reported in your local office, Office Manager Martha Morris spoke with you briefly and asked you to provide a written statement (attached hereto as Exhibit A). On 12/9/04, you wrote that on 12/8/04, two employees came into your office and asked why you had been late

---

7. It should be noted that the PAB's decision actually found that the "letter of dismissal clearly tells [Ms. Peterson] the date she made her inappropriate comments, and what her inappropriate comments, in general were."

coming in. "I explained to them that there had been a celebration the night before for the conclusion of the dart season, and I had had too much to drink. I did comment on the fact that I had found it fascinating that a number of people and [sic] approached me and told me that I was attractive, but did not know why they had thought so. I had stated that I was not sure when I had gotten home, but that Mel had called me and asked me if I knew where her teeth were and how they had gotten in her bra. I mentioned that at one point in the evening we (everyone on the dart team) had swapped shirts during the evening and that we were getting together on New Years Eve to trade them back." The two employees "laughed about how my life was more exciting then [sic] theirs and went back to their desks."

Attached as Exhibit A to Ms. Peterson's dismissal letter was Ms. Peterson's written statement about the incident that occurred in Ms. Peterson's office on December 8, 2004. Ms. Peterson's written statement about the incident is entirely consistent with how FSD described the incident in the dismissal letter. In fact, the dismissal letter quotes Ms. Peterson's written statement. It is without question that the dismissal letter provided Ms. Peterson with the details regarding the allegations of misconduct involving Ms. Peterson's allegedly improper conversation regarding her social activities during the dart tournament. The dismissal letter stated the date of the incident, December 8, 2004, where the incident occurred, her office, and detailed what was said, quoting Ms. Peterson's own written statement of the incident. Because the dismissal letter set forth the incident using Ms. Peterson's own recollection of the incident, clearly there is "no uncertainty as to the acts related to her discharge." *Id.*

██ Nevertheless, Ms. Peterson contends that the dismissal letter was insufficient because it failed to provide the names of the employees that made statements against her. Ms. Peterson, however, cites no statute, regulation, or case law that requires that the names of the employees that made statements against her must be included in the dismissal latter. Rather, as discussed above, to satisfy due process, notice must be "sufficiently specific as to the time and nature of the incident at issue so that the employee has no uncertainty as to the acts related to her discharge." *Id.*

In this case, the dismissal letter alleged that on December 8, 2004, Ms. Peterson "engaged in an inappropriate conversation about [her] social activities from the previous evening with subordinate employees in the workplace." Thus, the nature of the incident at issue is inappropriate conversations with subordinate employees. To adequately describe the nature of such an incident, in addition to the content of the conversation, the names of the individuals with whom Ms. Peterson allegedly engaged in conversation would be necessary. In order to prepare a defense to the charge that she "engaged in inappropriate conversation" with subordinate employees, it is necessary to know the names of the individuals with whom she engaged in such behavior. However, it is not necessary for purposes of describing the nature of the incident, as Ms. Peterson alleges, to set forth the names of the individuals who made statements against her because such information does not concern the time or nature of the incident at issue.

Here, in regard to the conversation Ms. Peterson had in her office on December 8, 2004, with her subordinates explaining why she was late for work and her social activities from the previous evening, FSD attached to the dismissal letter Ms. Peter-

son's written statement about the incident. Ms. Peterson's written statement of the incident included the names of the workers with whom Ms. Peterson had the allegedly inappropriate conversation, e.g., Eva, Sara, and Mary. Therefore, regarding this allegedly inappropriate conversation, the dismissal letter was sufficiently specific as to the time and nature of the incident at issue so that Ms. Peterson could prepare a defense. In effect, by attaching Ms. Peterson's written statement to the dismissal letter, the letter set forth the allegations that, on December 8, 2004, Ms. Peterson "engaged in an inappropriate conversation about her social activities from the previous evening with" Eva, Sara, and Mary. Based on this notice, Ms. Peterson could adequately prepare a defense to this allegation.

Regarding the other inappropriate conversations alleged in the dismissal letter, however, this court finds the notice insufficient. For example, the dismissal letter also alleged that (1) "[s]everal witnesses confirmed that throughout that day [December 8, 2004] [Ms. Peterson] relayed information about [her] statements" to others, (2) staff reported that she had another inappropriate conversation on December 8, 2004, about pets, and (3) staff reported that Ms. Peterson told them that three women were "hot" for her. In the allegations regarding these conversations, the dismissal letter does not indicate to whom Ms. Peterson allegedly made such statements. Again, while the names of the individuals that reported the statements against her is not necessary to describe the nature of the incidents, the names of the individuals to whom Ms. Peterson allegedly made the statements must be provided as such information is essential to describing the nature of the incident.

Without such information, Ms. Peterson is unable to prepare a defense to those charges. Consequently this court finds that the dismissal letter did not adequately provide notice to Ms. Peterson regarding these three allegedly inappropriate conversations.

In sum, the dismissal letter notified Ms. Peterson that her conduct violated section 36.380, subsections (H), (K), (L), and (M) of Rule 1 CSR 20–3.070(2), and department policies, DSS Policy 2–101, 2–115, and 2–124. In addition, regarding the dart tournament conversation in her office, the letter specifically described the date of the incident, December 8, 2004, and the nature of the incident, including the names of the individuals to whom Ms. Peterson allegedly made the statements. Consequently, with respect to the dart tournament conversation that occurred in Ms. Peterson's office, the dismissal letter provided Mr. Peterson with a written statement setting forth the particular reason for her dismissal that was sufficient for her to prepare a defense. *Id.* Accordingly, the PAB's order granting Ms. Peterson's motion for review of discharge is reversed with respect to this allegation. The PAB's order is affirmed with respect to the three other allegedly inappropriate conversations set forth in the dismissal letter.

### Order of Reinstatement and Back Pay Improper

In her second point on appeal, Ms. Peterson contends that the PAB did not err in ordering reinstatement and back pay because the PAB has the statutory authority to make her whole when she was not properly discharged.[8] Because the dismissal letter complied with due process with respect to the dart tournament conversation that occurred in Ms. Peterson's

8. In the argument section of her brief, Ms. Peterson also argues that she is entitled to attorney's fees as a prevailing party in an

agency proceeding. Ms. Peterson's point relied on does not mention attorney's fees nor, given this court's disposition of Ms. Peterson's

office, the PAB erred in finding that Ms. Peterson was improperly discharged and in reinstating her with back pay on this basis. Accordingly, Ms. Peterson's second point is denied.

### Conclusion

The PAB's order granting Ms. Peterson's motion for review of discharge and reinstating Ms. Peterson to employment with FSD with back pay is reversed. The matter is remanded to the PAB for a hearing on the merits of Ms. Peterson's dismissal on the basis of the conversation that she had in her office on December 8, 2004, with subordinate employees regarding the dart tournament.

All concur.

first point, is Ms. Peterson a prevailing party. Therefore, the question of attorney's fees need not be addressed.